IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DON WAYNE FREDERICK,** | } |
| **Plaintiff,** | } |
| v. | } Civil Action No.: 2:14-cv-01852-RDP |
| **CAROLYN W. COLVIN,** | } |
| **Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Don Wayne Frederick brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed an application for disability and DIB on November 7, 2012, alleging a disability onset date of March 31, 2012. (Tr. 194-197, 216). The Social Security Administration denied Plaintiff's application on January 10, 2013 (Tr. 141, 153). Upon Plaintiff's written request filed on February 22, 2013, an Administrative Law Judge ("ALJ") conducted a hearing on October 10, 2013 and issued an unfavorable decision on November 15, 2013. (Tr. 67-80, 85-126, 153).

On January 13, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 59-60). The Appeals Council upheld the ALJ's decision on August 11, 2014. (Tr. 14-17). The denial rendered the ALJ's decision the final decision of the Commissioner, and thus a proper case for review pursuant to 42 U.S.C. § 405(g). Plaintiff filed a complaint for review in this court on September 29, 2014. (Doc. #1).

## II.    Facts

Plaintiff was 30 years old at the time of his alleged disability onset date. (Tr. 216). Plaintiff has a high school education. He last worked as a private investigator, and his work history includes jobs such as sales manager, termite bond inspector, car salesman, construction worker, security guard, and bus boy. (Tr. 97-102). Plaintiff claims that he is totally disabled due to migraines, degenerative disc disease, arthritis, scoliosis, high blood pressure, depression, and restless leg syndrome. (Tr. 88-89). Plaintiff claims that these conditions cause several non-exertional impairments that prevent him from working such as pain, loss of concentration, fatigue, drowsiness, and problems sleeping.

From July 2010 to November 2012, Plaintiff was treated by Dr. James Tuck, his primary care physician. (Tr. 295-312). During the course of this treatment, Plaintiff was diagnosed with lumbar back pain, insomnia, gastritis, and gastroesophageal reflux disease. *Id.*

From August through September 2012, Plaintiff was treated by Dr. Matthew Berchuck following an assessment of radiculopathy and thoracic pain. (Tr. 342-354). The treatment included a myelogram and CAT scan of Plaintiff's spine. The tests showed decreased lordosis, but no nerve compression in the cervical portion of the spine, and the thoracic and lumbar studies did not reveal any abnormalities. The myelogram showed a mild disc bulge at C5-6. (Tr. 348).

On December 12, 2012, Plaintiff received a mental health evaluation at Eastside Mental Health Center. (Tr. 332). The evaluator ruled out any diagnosis of a bi-polar disorder or a major depressive episode with hypomanic episodes, but did diagnose Plaintiff with a depressive disorder, and noted that Plaintiff's pain may contribute to his depression. (Tr. 336).

Plaintiff also received care at Regional Pain Management from June to October 2013. (Tr. 355-361, 420-444). While there, tests revealed disc bulges in Plaintiff's spine at L4-5 and at L5-S1. Plaintiff was further diagnosed with lumbago, cervicalgia, spasms, insomnia, neuritis or radiculitis, chronic pain, disc degeneration, osteoarthrosis, myalgia and myositis. (Tr. 355, 430). These records also reveal that Plaintiff received a series of L5-S1 intralaminar steroid injections. (Tr. 429).

At the hearing before the ALJ, Plaintiff testified that he was fired from his last job as a private investigator because was unable to perform his duties and he had fallen several months behind on his case work. (Tr. 103-104). He stated that he receives monthly spinal blocks and was told that he needed a back brace, but his insurance would not pay for it, so he began using a cane based on his doctor's recommendation. (Tr. 111). Plaintiff further testified that the back pain radiates down his left leg. (Tr. 112). He also indicated that he experiences migraines a couple of times each month. (Tr. 113).

Plaintiff testified that during a typical day he gets up in the morning, gets a cup of coffee, watches the news, and lies in a recliner chair for a few hours. After eating breakfast, he naps for a couple of hours and spends most of his day watching television or lying in the recliner chair. (Tr. 90-91). Plaintiff further testified that sitting up straight for too long a period of time causes his back to begin to hurt, which triggers a migraine. (Tr. 91). Plaintiff stated that with his pain medication (Percocet 10, three times daily), he experiences pain that he would rate on average

from a 6-7 on a scale of 10. (Tr. 92). Further, according to Defendant, the medication side effects make him drowsy, light headed, and occasionally nauseous, and he has bad days two or three days per week in which he has severe headaches and stiffness to the point that he can barely move. (Tr. 93-94). On these days, he spends most of the day in bed, with the door closed and lights out. (Tr. 94). He also stated that he has trouble staying focused due to the pain, loses concentration, and has problems sleeping at night, in part, due to his restless leg syndrome, thereby making him tired and drowsy most of the day. (Tr. 96).

A Vocational Expert ("VE") testified in Plaintiff's ALJ hearing. He answered a line of questions posed by the ALJ with respect to hypotheticals based upon an individual of Plaintiff's age, education, and work experience, who is limited either to light or sedentary work with various exertional and non-exertional limitations. He was asked whether such a person would be able to work in any of the jobs previously held by Plaintiff. (Tr. 121). The VE explained that all of Plaintiff's previously held jobs were classified as semiskilled to skilled work that demanded light to heavy exertion. (Tr. 121). Under the ALJ's line of hypothetical questioning, the VE testified that such a person could perform simple, unskilled entry level work. (Tr. 121). After identifying various available light and sedentary jobs in response to the hypothetical questions, the VE testified that none of the jobs would allow an individual to recline throughout the workday to relieve pain, outside of the usual break times associated with a normal workday. (Tr. 123). Additionally, the VE testified that such jobs would not permit absences with the frequency that Plaintiff claimed to need. (Tr. 123). Finally, the VE testified that both a claimed need for two daily one hour unscheduled breaks and the inability to perform tasks constantly or persistently for an hour in a work day would likely preclude sustained competitive employment. (Tr. 124).

**III.    The ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Work activity involving significant physical or mental activities is "substantial," while "gainful" work is done for pay or profit. *See* 20 C.F.R. § 404.1572(a)-(b). A claimant is presumed to have the ability to engage in substantial gainful activity when his earnings from employment rise above the amount allowed under 20 C.F.R. §§ 416.974, 416.975. A claimant cannot claim disability if found to engage in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment, or combination thereof, that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

In the fourth step of the analysis, if the claimant does not meet the listed criteria, the ALJ may still find disability, after completing the claimant's residual functional capacity ("RFC") assessment. 20 C.F.R. § 404.1520(e). Based on this RFC assessment, the ALJ determines whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Should the ALJ find that the claimant is capable of performing past relevant work, the claimant is deemed not disabled. *Id.* However, if the ALJ finds that the claimant cannot perform past relevant work, then the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(a)(4)(v), 404.1520(g). At this stage of the analysis, the fifth and final step, the burden shifts to the ALJ to prove that, given the claimant's RFC, age, education, and work experience, the claimant is capable of making a successful adjustment to other jobs, which are available in substantial numbers within the national economy. 20 C.F.R. §§ 404.1520(g).

In this case, the ALJ applied the five-step analysis, and found that Plaintiff was not disabled as defined in the Social Security Act. In the first prong of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2012, the alleged onset date of Plaintiff's disability. (Tr. 69). At step two, the ALJ found that Plaintiff had severe impairments of depression, lumbago secondary to lumbar degenerative disc disease, hypertension, osteoarthritis, and chronic pain syndrome. (Tr. 69). In the third step, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment and that Plaintiff retained a residual functional capacity ("RFC") to perform light work—to the extent that it requires no climbing, other than occasional climbing of ramps and stairs; no exposure to excessive vibrations; no operation of hazardous machinery; no exposure to unprotected heights or uneven terrain; and no balancing, stooping, kneeling, crouching, or crawling. (Tr. 73). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. 74). Plaintiff's lack of credibility stems from the allegations of disabling pain being disproportionate to the medical evidence— which included no evidence of any nerve root impingement, no significant degenerative changes, no evidence of stenosis—and so extreme as to appear implausible. (Tr. 74). The ALJ also noted "multiple inconsistencies and exaggerations in [Plaintiff's] reports" both at the ALJ hearing and to examiners that cast more doubt on the credibility of his statements. (Tr. 75).

The ALJ, relying on the testimony of the VE, found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. 78). At the final step of the analysis, the ALJ, again relying on the testimony of the VE, but also considering the credibility of Plaintiff's subjective complaints of pain, found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. 78-79).

## IV.     Plaintiff's Argument for Reversal or Remand

Plaintiff seeks to have the ALJ's decision reversed and contends that the ALJ failed to apply correct legal standards. (Pl's Mem. at 10). Plaintiff raises two specific arguments: First, that the ALJ improperly determined Plaintiff's RFC by failing to obtain a medical opinion and by failing to fully explain his RFC finding; and second, that the ALJ improperly discredited his testimony with respect to his pain and non-exertional limitations.[1]  (Pl's Mem. at 9).

## V.     Standard of Review

The only determinations to be made by this court are whether the record reveals substantial evidence to sustain the ALJ's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence nor substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Considering the final decision as whole, the court may only decide if the decision is reasonable and supported by substantial evidence. *See id.*

---

[1] Any other contentions that may have been made by Plaintiff are waived. *See Cunningham v. Dist. Att'y Office for Escambia Cnty*, 592 F.3d 1237, 1254 n.9 (11th Cir. 2010); *Copher v. Comm'r of Soc. Sec.*, 429 F.App'x 928, 930 n.1 (11th Cir. 2011).

Substantial evidence is the relevant evidence "a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). When substantial evidence exists in support of the Commissioner's decision, the decision must be affirmed, even if the evidence preponderates to the contrary. *See id*. However, the court notes that judicial review, although limited, "does not yield automatic affirmance" of the ALJ's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI.  Discussion

In light of the legal standards that apply in this case, and after careful review of the record, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ's findings are supported by substantial evidence and that he applied proper legal standards.

### A.  The ALJ's Determination of and Explanation for Plaintiff's RFC is Supported by Substantial Evidence.

Plaintiff contends that the ALJ improperly determined his RFC at step five of the eligibility evaluation process because that determination did not rely on an assessment conducted by an examining physician. (Pl. Mem. at 10). Plaintiff avers (relying on *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15 (1st Cir. 1996)) that the ALJ's RFC finding is a "medical finding," which must be based on a physician's medical source opinion. The court disagrees. "[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F.App'x 993, 999 (11th Cir. 2010). The relevant SSR specifically states that "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative

8

findings that are dispositive of a case . . . ." SSR 96-5p, 1996 WL 374183, *2. One such "administrative finding" is "[w]hat an individual's RFC is[.]" *Id.*

Accordingly, the determination of Plaintiff's RFC is not a "medical assessment." Rather, it is an administrative determination which, pursuant to governing law, is solely within the province of the ALJ to make. *See, e.g., Castle v. Colvin*, 557 F.App'x 849, 853 (11th Cir. 2014) (unpublished decision) ("Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC."). Indeed, "[t]he law only requires that the ALJ's RFC determination be supported by substantial evidence in the record," and "[t]here is no requirement that the ALJ's RFC determination be equivalent to, or supported by, the opinion of a physician." *Fugate v. Colvin*, 2014 WL 1408055, *4 (M.D. Ala 2014).

Furthermore, it is clear from the record that the ALJ's RFC determination is supported by substantial evidence which was derived from record evidence from multiple doctors and objective sources. Throughout the record, no doctor proffered an opinion stating that Plaintiff was disabled, or that he had limitations more restrictive than what was assessed by the ALJ's RFC determination. Additionally, all of the imaging studies conducted regarding Plaintiff's lumbar spine—a particular focus of Plaintiff's argument—were unremarkable. (Pl. Mem. at 12-3). Dr. Berchuck described scans of Plaintiff's spine as both "negative" and "unremarkable" and recommended "conservative care." (Tr. 259, 261, 271). Dr. Frank Hodges described images of Plaintiff's back as "essentially negative" and showing "no evidence of stenosis or neural impingement." (Tr. 309). Dr. Hodges did not substantiate Plaintiff's continued reports of back pain, and offered no treatment other than physical therapy and anti-inflammation. (Tr. 309). Additionally, Dr. Ruth Snow noted only "mild" disc bulging, but no stenosis. (Tr. 358). "A doctor's conservative treatment for a particular condition tends to negate a claim of disability."

*See Sheldon v. Astrue*, 268 F.App'x 871, 872 (11th Cir. 2008); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (affirming determination that objective medical evidence showing minimal degenerative disc disease and no stenosis or nerve impingement did not establish disability).

Plaintiff asserts that "[g]iven the nature of [his] underlying impairments, and the fact that he takes Percocet 10 three times daily, it is inconceivable that his pain has no effect on his ability to perform non-exertional work-related functions . . . The RFC does not take into account any non-exertional limitations such as [drug side effects or fatigue]." (Pl. Mem. at 13). However, this assertion is off the mark. The ALJ opinion adequately explains the RFC findings, as well as the functional limitations arising from Plaintiff's impairments. (Tr. 76, 77). In particular, the ALJ noted the results of the musculoskeletal and neurological exams, and their showing of no effects on motor skills, muscle atrophy, or range of motion. (Tr. 261, 296, 304, 306-307, 355, 364, 385, 434, 443, 447, 450, 454, 456, 458, 461). As he also explained, there were additional limitations placed into the RFC assessment which arose from the general nature of Plaintiff's medications, despite the fact that not a single doctor imposed any such limitations on Plaintiff due to medication side effects. *See Kelly v. Comm'r of Soc. Sec.*, 401 F.App'x 403, 409 (11th Cir. 2010) (finding absence of limitations imposed by doctors on claimant's activities due to medications constituted substantial evidence that her medications did not affect her RFC).

The ALJ was not required to consult an examining physician in order to determine Plaintiff's RFC, and the ALJ considered a considerable sum of evidence in making his determination. Here, the ALJ's opinion clearly explained the RFC determination. Accordingly, the court finds substantial evidence supports the ALJ's finding, and the correct legal standards were applied, thereby satisfying the burden under 20 C.F.R. § 404.1520(g).

B.     The ALJ's Credibility Finding is Supported by Substantial Evidence.

Plaintiff also contends that (1) the ALJ failed to articulate a valid legal basis for discounting his credibility, and thus improperly discredited his subjective testimony with respect to pain and non-exertional limitations, and (2) the ALJ's findings are not in accordance with the Eleventh Circuit pain standard. (Pl. Mem. at 9-11). Additionally, Plaintiff argues that the ALJ's reasoning and credibility determinations were unsupported by substantial evidence; therefore, this court should accept as true Plaintiff's subjective allegations.[2]

According to regulations set forth by the Social Security Administration, Plaintiff's statements regarding his alleged disabling pain are not, in and of themselves, a sufficient basis for disability. *See* 20 C.F.R. § 401.1529(a). The Eleventh Circuit has established a standard for evaluating a claimant's assertion that he is disabled due to pain. For Plaintiff to satisfy the threshold inquiry, he must present: (1) evidence of an underlying medical condition, and (2) either objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition is of such severity as to be reasonably expected to give rise to the pain alleged. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Thus, the pain standard requires an initial threshold inquiry followed by a credibility determination. If a claimant meets the threshold inquiry, the ALJ is called upon to evaluate other factors to determine the credibility of the claimant's allegations of subjective symptoms. *Id.* If the ALJ discredits a claimant's subjective testimony of pain, the ALJ "must clearly articulate explicit and adequate reasons" for doing so.

---

[2] Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Cannon v. Bowen*, 858, F.2d 1541, 1545 (11th Cir. 1988).

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt*, 921 F.2d at 1223 (11th Cir. 1991).

In determining a claimant's credibility, an ALJ looks at intensity and persistence of the symptoms alleged, in addition to the extent to which the alleged symptoms impact functional limitations. *See* 20 C.F.R. § 404.1529. There are certain determinations that are solely within the province of the ALJ; clearly, a determination of credibility is one of those. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Indeed, it is well-settled that a reviewing court "will not disturb a properly articulated credibility finding that is supported by substantial evidence." *Strickland v. Comm'r of Soc. Sec.*, 516 F.App'x 829, 832 (11th Cir. 2013).

There is nothing in the relevant regulations that require an ALJ to point to an affirmative statement or express instance of malingering by a claimant. Rather, the ALJ must consider the case record as a whole, including medical evidence, the claimant's own statements, inconsistencies in the evidence, and other evidence provided by treating or examining physicians. *See* C.F.R. § 404.1529(c)(4); SSR 96-7p, 1996 WL 374186, at *1 (1996). In this case, the ALJ considered these factors and found Plaintiff not to be credible. (Tr. 74).

However, Plaintiff alleges that the ALJ ignored relevant factors in reaching that determination, including facts regarding Plaintiff's ability to assist with housework[3] and Plaintiff's ability to attend counseling services. (Pl. Mem. at 15). Additionally, Plaintiff contends that the ALJ considered his subjective complaints of pain only to the extent of the objective medical evidence, and in doing so committed reversible error. (Pl. Mem. at 15-16).

While it is true that Plaintiff's allegations should not be deemed less than credible solely because they are unsubstantiated by objective medical evidence, such evidence is nonetheless a

---

[3] A claimant's daily activities may be considered in evaluating complaints of disabling pain. *See Harwell v. Heckler*, 735 F. 2d 1292, 1293 (11th Cir. 1984).

12

"useful indicator" to assist the ALJ in making reasonable conclusions about Plaintiff's symptoms. *See* C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *6 (1996); *See also Brown v. Comm'r of Soc. Sec.*, 425 F.App'x 813, 818 (11th Cir. 2011) (finding examination that showed "no significant neurological impairment" supported ALJ's decision not to accept claimant's allegations of disabling lower back pain from a herniated disk). Among the objective medical evidence considered by the ALJ was the following:  a characterization of Plaintiff's bulging discs by Dr. Snow as mild (Tr. 358); Dr. Hodges' notes describing MRI results as "essentially negative" (Tr. 309); Dr. Hodges' statement that tests produced no evidence of significant degenerative changes, stenosis, or neural impingement (Tr. 74, 259, 261, 271, 309, 358); and evidence of full muscle strength, normal tone, and no atrophy in Plaintiff's lower extremities (Tr. 261, 296, 304, 447, 450, 454, 456, 458, 461). In considering such evidence, particularly in light of Plaintiff's description of his day-to-day activities, the ALJ explained that Plaintiff's allegations of disabling pain and limitations were so "disproportionate to the objective medical evidence . . . as to appear implausible." (Tr. 74).

      The ALJ went on to provide Plaintiff "every benefit of the doubt" (Tr. 77) by taking into account his referral to a pain management physician, prescriptions for medication, and receipt of two steroidal injections.  The ALJ considered this evidence supporting the degree of pain Plaintiff alleged. (Pl. Mem. at 15). Nevertheless, the failure of any doctor to place limitations on a claimant undermines his credibility. *See Smith v. Soc. Sec. Admin.*, 272 F.App'x 789, 798 (11th Cir. 2008) (noting that the failure of claimant's treating physicians to indicate disabling pain or limitations undermined claimant's credibility regarding disabling limitations).

      In addition to the objective medical evidence, the ALJ considered other inconsistencies and exaggerations that undermined Plaintiff's credibility. For instance, Plaintiff testified that Dr.

13

Snow prescribed a cane (Tr. 111), but the ALJ noted no evidence that Dr. Snow prescribed one or even believed a cane to be necessary. (Tr. 75). Plaintiff also stated that Dr. Snow placed him on work restrictions for over two years effective August 2013 (Tr. 430), but the record contains no evidence that Dr. Snow restricted Plaintiff in any way. (Tr. 75). Further, although Plaintiff reports disabling migraines (Tr. 94, 113), the ALJ noted there was no evidence in the record indicating that Plaintiff reported frequent headaches of a disabling nature to a doctor, no record of acceptable medical source diagnosed migraines, and, to the contrary, that Plaintiff often denied experiencing headaches. (Tr. 71, 295, 298, 303, 305, 307, 384, 443, 506). Plaintiff further testified to receiving monthly spinal blocks, but the record only contains evidence of two epidural steroid injections, one in July 2013, and the other in August 2013. (Tr. 363, 365, 420, 429, 441-442).

The ALJ also acknowledged Plaintiff's failure to seek counseling despite allegations of disabling depression. (Tr. 75). "A claimant's failure to seek medical treatment is also relevant in assessing credibility." *Sheldon v. Astrue*, 268 F.App'x 871, 872 (11th Cir. 2008) (*citing Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984)). Plaintiff's credibility also was called into question by the ALJ at the hearing when Plaintiff attempted to justify why he did not follow up at the Eastside Mental Health Center. Plaintiff stated treatment would be unnecessary because his primary care provider, Dr. Tuck, was already treating his depression with psychotropic medication. (Tr. 105). However, the record notes that Dr. Tuck prescribed Trazodone to treat insomnia, not depression. Further, Dr. Tuck noted few complaints or observations of depression symptoms during the relevant period, and diagnosed depression on only one occasion, in July 2010, which was before the alleged onset of Plaintiff's disability and his initial visit to Eastside Mental Health Center. (Tr. 75, 295, 297-300, 304-306, 308). Additionally, Plaintiff's reasoning

for not seeking treatment—that he was embarrassed—does not appear to hold any weight either, based on the alleged severity of Plaintiff's depressive symptoms, his openness during the intake interview, his prior receipt of mental health services, and his failure to seek more familiar, alternative counseling options, such as pastoral counseling. (Tr. 75, 332-334).

After careful consideration of the record, the ALJ's review of objective medical evidence, inconsistencies in Plaintiff's testimony, and Plaintiff's failure to seek out treatment for his alleged disabilities, the court concludes that the ALJ's determination that Plaintiff lacked credibility is supported by substantial evidence.  Because the ALJ adequately provided reasoning for his credibility determinations, the court need not reach the issue of accepting subjective allegations as true under *Holt* and *Cannon*, as contended by Plaintiff. [4]

Accordingly, the court finds that the ALJ properly analyzed the evidence of record as a whole, and his credibility determinations are supported by substantial evidence.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this January 11, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[4] *See Supra*, note 1.